will stay and will now call the case of the United States of America v. Gillian Harper. Mr. Katore, is that right? Katore. Okay. Mr. Katore. Good morning. May it please the court, I'm Anthony Katore and I represent the felon, Gillian Harper. I would like to request three cases to be granted. Gillian Harper, can you hear me? We can hear you. Gillian Harper requests that his honorable body maintain his honestly 2011 conviction. This case is the containment of D.C. 34. Do you agree under McDonough that the question that we need to answer is whether there was actual juror dishonesty in answering the voir dire question? And where, as here, the question, the question wasn't asked. How could we make a finding of dishonesty? The question was not asked. And for the ex parte hearing, which was a violation of Mr. Harper's right to cross examine the jurors, we were not given an opportunity to ask the jurors, were you biased because of your knowledge of the Hansard family or because your family members were murdered? Didn't you have the opportunity to ask those sorts of questions at the subsequent hearing that involved both parties? By then, that was like nine months after the fact. By then, the jurors already had, as I think Manis did it earlier, they were kicked off. So they knew how to respond to the questions. Did you ask the questions? No, Judge. Even if he was, even if the answers to the questions after trial would have shown dishonesty, how do you establish bias? I mean, I think what you're trying to say is, there was enough here that Donovan should have said, look, I know this family. I may not know the kid, but I know this family. That's what you're trying to say. But how do you show that he was biased against your client without arguing that there is bias as a matter of law just because he knew somebody? Because by any means, the family, as I said, we don't know the relationship between the client and the family. We don't know if when he got here, they called the country to get sure. We don't know if the grandfather said, oh, professional. We don't know that. So it's all a stipulation and a question. The question, what is the degree of the vulnerability between Donovan and the family? In addition, it should be noted that Mr. Donovan stated that there were other jurors, other jurors and panel that were referring to the grandfather as the one who called him by his nickname. So therefore, there are other jurors that we don't know about. The big question mark. Wells and the jury panel may have had some kind of bias against my client. We don't know that. And then for Ms. Lake. Ms. Lake? I guess what I'm getting at is it seems to me that you're arguing for a case of automatic disqualification. Excuse me. You're arguing for a case of automatic disqualification if in fact the juror knew the family. If the family knew the family, then the defense would have a duty to try and cause. But we need to know what was the degree of this relationship. And as for Ms. Lake, three of our family members were murdered in highly publicized killings and assassinates. Her uncle, Edwin Velasquez, was murdered. Her cousin, Almanzo Williams, and her first cousin. Judge Fish asked a question. Try to speak into that microphone as closely as you can. Judge Fish asked during void air. Not too close because then we get that reverberation. Judge Fish asked a question during void air. Has anyone in the jury panel been a victim or an amendment of a victim of a crime inciting a weapon? No response from the state. There was no response. Subsequent to the conclusion of the trial, we followed the leadership of the court jury committee members. Two years after the court held the ex parte hearing, the jury panel was not invited to the hearing. Gideon Harper was asked to provide questions to Ms. Lake or Mr. Donovan. When Shanique Lake was asked, do you remember hearing a question, she said no. But if I did hear the question, I would have raised my card. Therefore, she is saying that she knew that this is a crime. If she didn't hear the question, she would have raised her card because a family member was murdered. Then when Attorney Andrews asked her if there were any other family members other than the victim of a crime involving a weapon, her first response was no response. Attorney Andrews had to probe and say, what about Almanza Williams? What about Allora Tutankhamen? Then she said yes, they were my cousins. However, I don't know them like that. They are not close. They are cousins. Allora is her first cousin. They are children of two brothers. We live in a small community. This was a high crime. She wanted to put Allora because not only was Allora killed, but Allora was pregnant at the time of her death. Also, her mother was murdered. So, for Shanique to say that they were not close, it begs the question. But the district court was there, took the testimony, and was in a position much better than we are on a cold transcript to assess her credibility. How could we, when there is a reasonable basis for the district court to have concluded that she answered the way she did because she didn't have those relatives in mind, she wasn't close to them, she just didn't recall because they were too distant, how could we second guess the district court's credibility determination that she was not deliberately lying? What about her mother, who was Edmund Velasquez's sister? What about her grandmother, who was Edmund Velasquez's grandmother? Wouldn't a reasonable person say that they provide a mother and a grandmother reaction to the case of death? Wouldn't that have a bearing on Shanique? But is there case law supporting this concept that it's not only the juror's relationship to the person who was murdered, but other relatives' relationship? I think that's going beyond what any of the cases so far have said, isn't it? This is a very small community. As you say, the key in Shanique Blake's name is Dr. Tine. And we'll have you back on rebuttal. Thank you very much. Mr. Andrews? Now, I think what Mr. Couture is trying to argue here is that the circumstances over here in St. Croix are unique. Because of the proximity here, the smallness of the island, and how close everybody is to everyone else, and that this was a homicide that virtually everybody knew about, that these answers by both Donovan and Lake didn't allow defense counsel and or the defense counsel to have a say in the case. I don't know if that's true. I really have to say about that. Let's start with Donovan. Mr. Couture started with Donovan. Before that, and this is at the subsequent hearing in which Donovan appeared, the court said, do you remember the court asking the jurors whether or not, now that you read the indictment, if any of the jurors heard anything about the case before you? The answer, yes, sir. And did you raise your card to that question? Yes, sir. You did? Yes, sir. Okay. When did you do that? Do you remember the court asking whether or not any of the jurors heard anything about the case before? Yes, I remember that. Okay. And had you heard anything about the case before? I did not know about the case before. But he said he did raise the card that he heard anything about the case. He said he did raise the card. Okay. So I'm not sure what the court inquiry is. The court inquiry is if he did raise the card. I'm saying he did not. Nobody testified to that or not. Because my recollection of the record of the one here shows that none of these jurors raised their cards to any of the questions. So you're saying that answer is inaccurate as to what he did at the initial hearing. Correct. And that could be that he was mistaken. He didn't understand the question. Okay. So what he did say afterwards, between the interview and the hearing, is that he knew two individuals. I think one is Luis Encarnacion. I forget the other one's name. But he didn't say that he knew Luis Encarnacion. Who is this person called? Okay. Is Luis Encarnacion the witness, or is it another member of the family? He wasn't a witness. He's boldly alleged to be a family member of the victim. But we see that as out of no moment, because the juror testified that he didn't know him. He found out about the relationship after the verdict, when he drew the card. And then he went further to say, well, he didn't know that. In fact, I think, quoting Donovan, it can go to what he said. He said after the verdict was announced, and the jurors left, he heard that a person named Beaufort was the victim's grandfather. And then he says he didn't know who Beaufort was. And also after the verdict, he learned that Jose Encarnacion and Federico Encarnacion, that's two other people, were his uncles. So we're talking about the grandfather and then two uncles. But he said neither of the uncles were friends of his. I mean, that's a testimony that he had from him. And so I would say that on that basis, there is nothing that would allow the court to conclude that somehow the juror 104 was dishonest, based upon the record. With respect to Shanique, I think counsel is simply saying that the court may have been factually incorrect in its conclusion that Shanique Lake when she said that she didn't know these relatives like that. Mr. Andrews, we had held in Mitchell that the standard for evaluating implied bias is that it be an extreme situation. And as Judge Roth alluded to earlier, we limited that in our holdings so far in any event to situations where someone was related to the victim or participant in a crime. Do you agree with the point that has been raised by Mr. Couture that given the unique community involved, the size of it and the familiarity of people with each other's families here, that that is something that needs to be taken into account in evaluating the extreme situation? That is, whether you state the standard the same way, but take account of that factor, or you expand the standard itself, that in circumstances like this, it's appropriate to take account of the uniqueness of the community involved? I think that the court should take into consideration in any implied bias analysis that you have the inclusion. I disagree, however, that the conclusion is simply because the community is small. Somehow this court should simply infer that if one has a first cousin, if so, factor, they're close. That's what he's saying, and that's what you'd have to find to now conclude that it was implied bias merely because of the relationship. And the problem with that is, when you take it to that level, you have, in this case, actual testimony to the country. So what he's asking you to do is initially speculate, so that even though you may say, I don't think he's saying that simply because, simply because of the small community, that means that every individual that has a first cousin is close to that cousin. I mean, that's where you have to predict. He's not saying it's maybe or it might be. He's saying it is. And you have to say it without prevailing in this motion. You have to have this broad sweep. And here you have testimony to the country. But I'm saying even without the testimony to the country, my answer would be, no, I don't think this is a circumstance in which it should be expanded. And when I say expanded, to make that particular conclusion. Obviously, the court needs to consider all the circumstances. Maybe there's someone that is here, that would support a different conclusion in this case. But to simply make that blanket assertion that the closeness automatically means that you're close, no. It may not automatically, but the testimony that we are lacking is anything as to at least Ms. Lake's assertion of whether she in fact was biased or that the family relationships affected her in any way, because the question wasn't asked. Had it been, we might have a more complete record to consider. This is true, but what you do have, and since you don't have that information, I agree, you're left with only the information of what happened. And what you do have is that Ms. Lake is saying, at least with respect to her uncle, she said she only knew about him from what she has heard, because most of the time he was in jail. She said, so, I don't know him like that. With respect to Almanzo, she said, I did not know him personally. I was not close to him. In fact, she said she believed he was more than that. He doesn't even know. She said she doesn't know the details. And in other cases of time, she said she died as a result of firearms. I was not close at the time. She said, I don't recall the circumstances of his death. And she summed it up with both of them by saying, I wasn't close to the other two, so I don't really know, I don't keep them in my mind like that. That's the evidence we have. And our position is that that evidence supports factual findings that she didn't recall that she wasn't close to, which resorted to the applicable standard this court should accept, so long as there is sufficient evidence that makes that finding plausible. That's the standard under clear law. I don't think that it has been. Mr. Andrews, let me ask you a question here about the voir dire. This case is before Judge Finch. When picking a jury here in St. Croix, does the clerk ask the questions to the jurors? Does the clerk or the court ask the questions? Do they bring up the jurors who have raised their hand to a particular question one by one, or are you not familiar with the process? Do you know what happened in this case? How it would have been conducted? If you know. So your answer to the question tells me that it's not done here any differently than it's done anywhere else. As a former district judge, that's what I used to do. I think a lot of judges do that. Because you don't want to embarrass anyone. Right. And how is it that you say that Judge Finch does it? He would or would not? He would not. Is that sufficient? Is it sufficient to do the voir dire process that way? Even after they raised their hand, let's say they say yes. One juror said, yeah. I think it was her husband or something that had his head busted and beat up. I think she said herself she wouldn't make him a lawyer. But then the question came afterwards. Despite that, in this case, I'm a female. And the juror said yes. And ironically, that particular juror that I mentioned in my brief would not ask a question. Who does the follow-up questioning? Is it the judge? Can the attorney submit follow-up questions? Okay. Mr. Andrews, we thank you. Mr. Couture on rubato. Yes. Yes. Yes. Yes. Yes. Yes. Mr. Couture, are you arguing from that that her statements were deliberately deceitful? Or are you arguing that because of those relationships, that that should have led to itself a finding of bias? Yes.